UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-464-MOC-DSC

SHALAE ELLIS-BARR and BRITTANI )
THOMPSON (GABRIEL), )
)
         Plaintiffs, )
)
vs. )
)
CP/DB HOUSING PARTNERS XIII, )      ORDER
L.P., TESCO PROPERTIES, INC., )
MAVIS WILLIAMS and SHAWN )
LISENBY, )
)
         Defendants. )
_____ )

**THIS MATTER** comes before the Court on a Motion to Dismiss for Failure to State a Claim, filed by Defendant Mavis Williams. (Doc. No. 51).

### I.    BACKGROUND

The following allegations are taken as true for the purposes of Defendant Williams' motion to dismiss:

Defendants Mavis Williams and Shawn Lisenby were the on-site property manager and maintenance worker, respectively, at Orchard Park Apartments from Summer 2017 to Fall 2018. (Doc. No. 45 at ¶¶ 23, 25-27). TESCO Properties and CP/DB Housing Partners XIII own Orchard Park Apartments. (Id. at ¶¶ 5, 6, 20). Defendant Williams was responsible for Defendants CP/DB's and TESCO's compliance with state and federal laws. (Id. at ¶ 11). Williams was a decision-maker related to the claims raised in Plaintiff's Complaint, which included having the ability and obligation to investigate and report complaints. (Id.). Lisenby worked under Williams' direct supervision, and Williams considered Lisenby as working for her.

1

(Id. at ¶ 12). Plaintiffs Shalae Ellis-Barr and Brittani Thompson (Gabriel) resided at Orchard Park Apartments from October 2014 to October 2018, (id. at ¶¶ 28, 50), and January 2014 to February 2019, (id. at ¶¶ 51, 61), respectively.

During Ellis-Barr's tenancy, Lisenby sexually harassed Ellis-Barr by grabbing Ellis Barr's buttocks on two separate occasions inside Ellis-Barr's apartment while there to make repairs or inspect the premises. (Id. at ¶ 29). The first assault occurred in the Summer or Fall of 2017. (Id. at ¶ 31). Ellis-Barr responded by backing away but did not address the inappropriate behavior because she feared Lisenby would refuse to make the much-needed repairs. (Id.). After the second incident of assault occurred, Ellis-Barr and a witness told Lisenby his behavior was out of line. (Id.). Lisenby also made statements of a sexual nature to Ellis-Barr, including offering to fix anything if she had sex with him and texting her to "kiss" him. (Id. at ¶ 29).

Considering the second assault as an escalation of behavior that needed to be stopped, Ellis-Barr reported the incidents to Williams, but Williams disregarded Ellis-Barr's concerns, telling Ellis-Barr that no one who worked for her would act like that. (Id.). Williams did not promptly investigate, report the assault, or take any other corrective action. (Id.). Not wanting to encounter Lisenby, Ellis-Barr stopped requesting repairs. (Id. at ¶ 33).

Ellis-Barr is disabled; her impairments cause her to suffer from anxiety and depression. (Id. at ¶ 34). Ellis-Barr's feelings of anxiety and depression worsened when thinking of the assault perpetrated by Lisenby. (Id.). Ellis-Barr did not want to leave her apartment out of fear she would encounter Lisenby or Williams. (Id.). Ellis-Barr had trouble doing housework because her disability made getting out of bed difficult. (Id. at ¶ 35). Ellis-Barr shared her struggle and her need for help with Williams. (Id.). Williams responded by telling Ellis-Barr she should give up her son. (Id.). Williams continued conducting surprise inspections of Ellis-

Barr's apartment and issuing failed inspection notices informing Ellis-Barr she could lose her housing. (Id.).

Ellis-Barr's mental disabilities worsened due to the sexual harassment, surprise inspections, and potential loss of housing, and she requested an assistance/service animal to help her cope. (Id. at ¶ 37). The TESCO president wrote a letter approving the request on April 27, 2018 and asked Ellis-Barr to fill out the Assistance Animal Lease Addendum. (Id.). On or about May 18, 2018, Ellis-Barr told Williams that she had contacted Legal Aid of North Carolina for assistance. (Id. at ¶ 38). Williams responded by telling Ellis-Barr she could not have a service animal. (Id.).

On or about May 24, 2018 at 2:30 a.m., Williams further retaliated by towing Ellis-Barr's vehicle without notice. (Id. at ¶ 39). Williams cited several issues regarding the vehicle as to why she towed it; however, other tenants' vehicles with the same issues were not likewise towed. (Id.). On or about May 31, 2018, Williams attempted to have Ellis-Barr's second vehicle towed, citing expired registration and no insurance. (Id. at ¶ 40). However, the registration was current and the lease agreement did not require insurance. (Id.). Moreover, other cars in the parking lot visibly displayed expired registration. (Id.).

On or about May 31, 2018, Legal Aid of North Carolina sent a letter on behalf of Ellis Barr to TESCO's counsel that included mention of the baseless towing, the denial of her service animal, and the sexual harassment perpetrated by Lisenby. (Id. at ¶¶ 41, 42). The letter also cited the need to request repairs but the hesitation to do so out of fear of further sexual harassment. (Id.). Williams responded with a notice on June 6, 2018, informing Ellis-Barr her apartment was going to be inspected and stating Ellis-Barr could leave if she felt "uncomfortable." (Id. at ¶ 43). On June 7, 2018, Williams, ignoring Ellis-Barr's request for an

3

alternate maintenance tech, sent Lisenby to do the inspection. (Id.). In the same June 6th notice, Williams informed Ellis-Barr failure to report needed repairs violated her lease, despite the letter Legal Aid sent expressing Ellis-Barr's apprehension about reporting repairs because of Lisenby. (Id. at ¶ 44).

On July 26, 2018, Williams sent another lease violation notice to Ellis-Barr because she failed to provide registration of her service animal. (Id. at ¶ 47). The notice also stated maintenance would continue to perform repairs to Ellis-Barr's apartment but failed to state whether Lisenby would perform the repairs. (Id.). On August 2, 2018, Williams sent Ellis-Barr a letter of lease non-renewal, citing fourteen different instances occurring from May 19, 2018, to July 25, 2018. (Id. at ¶ 48). The violations included Ellis-Barr's failure to report needed repairs, despite her notifying Williams she did not report the repairs out of fear of further sexual harassment. (Id.).

During Gabriel's tenancy, Lisenby sexually harassed Gabriel. (Id. at ¶ 52). Lisenby groped Gabriel's buttocks in the parking lot of Orchard Park in the Summer of 2017. (Id. at ¶ 53). In February/March of 2018, when making repairs to her apartment, Lisenby grabbed Gabriel's buttocks, made sexually suggestive remarks, and told her she should leave her husband for him. (Id. at ¶ 54). After the second assault, Gabriel stopped making repair requests to avoid Lisenby coming to her apartment, despite having serious repair issues. (Id. at ¶¶ 55, 56).

Gabriel did not initially report Lisenby's sexual harassment because she observed that Williams and Lisenby had a close relationship and did not believe Williams would take her complaints seriously. (Id. at ¶ 57). In September 2018, Gabriel and other female residents of Orchard Park listened as one resident spoke to Williams about Lisenby's sexual harassment of female tenants. (Id. at ¶ 58). Rather than taking the allegations seriously, Williams said the

4

women were "hos" and "crack addicts" and accused them of selling meth. (Id. at ¶ 59). Williams said that they were lying or deserved what Lisenby did to them. (Id.). Gabriel and the other residents later went to Williams' office to confront her about her response to the allegations about Lisenby. (Id. at ¶ 60). Williams denied calling the residents names. (Id.). Williams' and Lisenby's employment was eventually terminated. (Id. at ¶ 27; Corporate Defs.' Answer to Second Amended Complaint at ¶ 27). As a result of Williams' conduct, Plaintiffs suffered damages including emotional distress, humiliation, embarrassment, mental anguish, and loss of dignity. (Id. at ¶ 65).

Plaintiffs filed this action in state court on August 13, 2019, and Defendants removed the action to this Court on September 18, 2019. Plaintiffs filed a Second Amended Complaint on April 6, 2020, bringing various claims against Williams. First, Plaintiffs allege the following claims against Williams, all arising under the Fair Housing Act: (1) a claim for hostile work environment, under 42 U.S.C. § 3604(b) (Plaintiffs' Second Cause of Action); (2) unlawful threats, and interference, under 42 U.S.C. § 3617 (Plaintiffs' Third Cause of Action); and (3) unlawful threats, intimidation, interference, and retaliation, under 42 U.S.C. § 3617 (Plaintiffs' Fourth Cause of Action). Plaintiffs also bring a claim against Williams for unfair and deceptive trade practices, under N.C. GEN. STAT. § 75-1.1 et seq. (Plaintiffs' Tenth Cause of Action). On May 4, 2020, Defendant Williams filed the pending motion to dismiss, seeking dismissal of all claims against her for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule

12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

### III. DISCUSSION

As noted, based on the factual allegations in the Second Amended Complaint, Plaintiffs purport to bring a claim against Williams for hostile work environment under 42 U.S.C. § 3604(b), a claim against Williams for unlawful threats, and interference under 42 U.S.C. § 3617,

and a claim against Williams for unlawful threats, intimidation, interference, and retaliation under 42 U.S.C. § 3617. Williams contends that she cannot be held individually liable for any of these sections of the FHA. The Court does not agree. Although the Fourth Circuit does not appear to have addressed the issue of whether there is individual liability under the FHA, other circuits and district courts have held that, although a supervisor generally cannot be vicariously liable for an FHA violation committed by a junior employee, the supervisor may be directly liable if she participated in the violation or ratified it, as Williams allegedly did. See e.g., U.S. v. Big D Enters., Inc., 184 F.3d 924, 928–31 (8th Cir. 1999) (individual owner president of apartment management company held liable with company when he told employees not to rent to black applicants); City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc., 982 F.2d 1086, 1096 (7th Cir. 1992) (stating that direct or vicarious involvement in discrimination supports personal liability under the FHA); Northside Realty Assocs., Inc. v. U.S., 605 F.2d 1348, 1353–54 (5th Cir. 1979) (president and vice-president of corporate real estate firm held individually liable along with firm because the officers either instructed or encouraged employees to discriminate); Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer, 6 F. Supp. 3d 1272, 1293–94 (S.D. Fla. 2014); Copemann v. Briel, No. 1:11-CV-75-SPM-GRJ, 2011 WL 2292113, at *5 (N.D. Fla. May 6, 2011), report and recommendation adopted, No. 1:11CV75-SPM/GRJ, 2011 WL 2222159 (N.D. Fla. June 8, 2011) ("While individuals can be held liable for violations of the FHA, in order to do so the individual personally must have committed one of the acts prohibited under the FHA.").

Here, the allegations in the Second Amended Complaint are sufficient under FHA case law and under Twombly and Iqbal to deny the motion to dismiss by Williams. Likewise, as to Plaintiffs' claim against Williams for unfair and deceptive trade practices under the North

7

Carolina UDTPA, Plaintiffs have sufficiently alleged the UDTPA elements.  See, e.g., Stolfo v. Kernodle, 118 N.C. App. 580, 583, 455 S.E.2d 869 (1995) (landlord's renting out of house was "in or affecting commerce" so as to be covered by N.C. GEN. STAT. § 75-1.1).  Moreover, Williams' status as an individual employee does not shield her from liability because courts have upheld UDTPA claims against individual employees where the employee's actions were in commerce or affected commerce.  See, e.g., Songwooyarn Trading Co. v. Sox Eleven, Inc., 213 N.C. App. 49, 714 S.E.2d 162 (2011) (employee's actions in misappropriating funds intended for an employer were in or affected commerce for N.C. GEN. STAT. § 75-1.1 purposes).  In sum, given the extremely lenient pleading standards of Iqbal and Twombly, the Court will deny the motion to dismiss, pending further development of the record.

### IV. CONCLUSION

Defendant's motion to dismiss is denied pending further development of the record.

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Dismiss for Failure to State a Claim, filed by Defendant Williams, (Doc. No. 51), is **DENIED**.

Signed: August 21, 2020

Max O. Cogburn Jr
United States District Judge